**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**
**BUFFALO DIVISION**

| | |
|---|---|
| JEFFREY BLISS-GRAHAM,<br> PLAINTIFF,<br><br>v.<br><br><br>UPSTATE REMEDIAL MANAGEMENT INC.,<br>ALLIED ALLIANCE GROUP, INC.,<br>HARRIS HILL CONSULTING GROUP INC.,<br>INTERCAP SERVICES, LLC, and<br>NATIONAL DEBT HOLDINGS LLC,<br> DEFENDANTS. | CASE NO.:  1:26-cv-735 |

**COMPLAINT AND JURY DEMAND**

**JURISDICTION AND VENUE**

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d).

2. Supplemental Jurisdiction exists pursuant to 28 U.S.C. § 1367.

3. This action arises out of the violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") by Upstate Remedial Management Inc. ("Upstate"), Allied Alliance Group, Inc. ("AAG"), National Debt Holdings, LLC ("NDH"), Intercap Services, LLC ("Intercap") and Harris Hill Consulting Group Inc. ("Harris Hill").

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), in that defendants transact business in this judicial district and a substantial portion of the acts giving rise to this action occurred in this District.

5. Plaintiff resides in this District.

1

## PARTIES

6. Plaintiff, Jeffrey Bliss-Graham ("Plaintiff"), is an adult individual residing in Erie County, New York, and is a "consumer" as the term is defined by 15 U.S.C. § 1692a(3).

7. Upstate is a New York LLC doing business from Rochester, New York.

8. Upstate advertises on its website (www.upstateremedialmanagementinc.com/about) (last visited January 14, 2026) "Upstate Remedial Management Inc. is a up and coming recieveable  management company focused on medical, commercial, and credit card debt." (Errors in original.)

9. As will be described below, Upstate attempted collections on an Account allegedly owed by Plaintiff to another for the purpose of making a profit off of its efforts.

10. The principal purpose of Upstate is the collection of debts using the mails and telephone and other means.

11. Upstate regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another that arose out of transactions in which the money, property, or services which are the subject of the transactions are primarily for personal, family or household purposes.

12. Upstate is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

13. AAG is a New York corporation doing business from the Rochester, New York area.

14. As will be described below, AAG received an Account allegedly owed by Plaintiff from co-defendant third-party for the purpose of collecting on that Account to make a profit.

15. The principal purpose of AAG is the collection of debts using the mails and telephone and other means.

2

16. AAG regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another that arose out of transactions in which the money, property, or services which are the subject of the transactions are primarily for personal, family or household purposes.

17. AAG is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

18. NDH is a New York corporation doing business from the Rochester, New York area.

19. NDH is not registered to do business in Maine, but can be served via its registered agent in New York or wherever it may be found in accordance with Maine or New York law or the Federal Rules of Civil Procedure.

20. As will be described below, NDH purchased a defaulted consumer financial account for the purpose of recovering the balance owed in order to make a profit.

21. On information and belief, the profits made by NDH from the business activity described in the paragraph above accounts for more than 50% of NDH's income.

22. The principal purpose of NDH is the collection of debts using the mails and telephone and other means.

23. NDH regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another that arose out of transactions in which the money, property, or services which are the subject of the transactions are primarily for personal, family or household purposes.

24. NDH is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

25. Intercap is a New York company operating from the Getzville, New York area.

26. Intercap can be served in any manner that is in accordance with the Federal Rules of Civil Procedure.

27. Intercap advertises on its website (www.intercapserv.com) (last visited April 13, 2026):

> Intercap Services is a passive debt buyer. We acquire portfolios for long-term value and rely on a select network of trusted third party servicing partners to manage recoveries.

28. As will be described below, Intercap received an allegedly defaulted consumer financial account that was allegedly owed by Plaintiff from a company that is not a party to this lawsuit for the purpose of collecting the balance of that account from Plaintiff.  Intercap then hired co-defendant Harris Hill to collect the Account from Plaintiff.

29. The principal purpose of Intercap is the collection of debts using the mails and telephone and other means.

30. Intercap regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another that arose out of transactions in which the money, property, or services which are the subject of the transactions are primarily for personal, family or household purposes.

31. Intercap is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7).

32. Harris Hill Consulting Group Inc. ("Harris Hill"), is a New York Corporation operating from Depew, NY.

33. Harris Hill can be served via its registered agent in New York or wherever it may be found in accordance with New York law or the Federal Rules of Civil Procedure.

34. On information and belief, Harris Hill manages the collection of defaulted financial obligations for the purpose of collecting the balances owed, either directly or indirectly, in

4

order to make a profit for itself and for debt buyer clients that hire Harris Hill for its services.

35. On information and belief, the profits made by Harris Hill from the business activity described in the paragraph above accounts for more than 50% of Harris Hill's income.

36. Harris Hill was hired by Intercap to collect, or manage the collection of, a defaulted consumer financial account that had been purchased by NDH.

## FACTUAL ALLEGATIONS

37. At some time in the past, Plaintiff allegedly incurred a financial obligation that was primarily for personal, family or household purposes, namely an amount due and owing on a personal loan (hereinafter the "Account").  Specifically, plaintiff believes the account was a loan issued by a company known as "U Own Leasing."  The funds from this loan were not used for any business or commercial purposes, but were used to purchase tires for Plaintiff's personal automobile.

38. The Account constitutes a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

39. The Account allegedly went into default with the original creditor, Check N Go.

40. On information and belief, after the Account allegedly went into default, the Account was purchased by NDH.

41. After purchasing the Account, NDH hired Intercap to oversee the collection of the Account.

42. Thereafter, Intercap hired Harris Hill to manage the collection of the Account.

43. Harris Hill then Hired AAG to collect the Account.

44. AAG then placed the account with or otherwise transferred the Account to Upstate to communicate with Plaintiff and obtain payment of the Account from Plaintiff.

45. At all times relevant hereto, regardless of who was placing the calls discussed below, NDH, Intercap, Harris Hill, AAG and Upstate knew about and profited, or attempted to profit, from the unlawful collection practices used by Upstate.

46. Plaintiff admits the existence of the Account, but disputes the amount Defendants attempted to collect from him.

47. Plaintiff requests that Defendants cease all further communications regarding the Account.

48. During the one year prior to the filing of this complaint, Upstate left a voicemail message for Plaintiff which stated:

> Jeffrey Bliss, this is Jared Andrews. I'm contacting you because I need to verify the address we have for you. I have documentations I need to get out and I'll be attempting to do so tomorrow. If you have any questions or concerns, you need to contact the legally authorized party at 835-201-0969, and your file number is 947990. When you contact them, request to stop the process to prevent the attempt status on file. You've been notified.

49. Subsequently, Upstate left another voicemail message for Plaintiff which stated:

> Jeffrey Bliss, this is Jared Andrews. I have not received verification of your address, nor have I received notification of the process being stopped. I'll be attempting to get a documentation out today. If you have any questions, you can contact the legally authorized party at 835-201-0969, and your file number is 947990. You can contact them to see if you still have the option stop the process. You've been notified.

50. By making the statements used in the voicemail detailed above, Upstate indirectly or directly told Plaintiff that a lawsuit had been filed or imminently would be filed against him and that a process server was attempting to locate Plaintiff.

51. The communications described above would cause the least sophisticated consumer to believe that a lawsuit had been filed or imminently would be filed against him and that an attorney was working on recovery of the Account for Upstate.

52. As of the filing of this Complaint, no lawsuit has been filed against Plaintiff on the Account and no process server has ever attempted to serve Plaintiff.

53. At the time Upstate made the statements detailed above, neither Upstate, nor the creditor on whose behalf Upstate was collecting, had any intent to sue Plaintiff on the Account as threatened.

54. The things said to Plaintiff in the above-described telephone call were false and deceptive as there was no pending or impending lawsuit and there was no process server attempting to serve Plaintiff.

55. Upstate's sole purpose for making the statements was to intimidate Plaintiff into making a payment on the Account.

56. Upstate also caused substantially similar voicemails to be left for Plaintiff's mother for the purpose of embarrassing and humiliating Plaintiff.

57. The voicemails left for Plaintiff's mother disclosed to her that her son owed a debt or alternatively that her son was in legal trouble.

58. Upstate did not have Plaintiff's consent to speak to his mother as part of its process of collecting the Account from Plaintiff.

59. Plaintiff was embarrassed and humiliated when his mother conveyed to him what Upstate had told her.

60. Upstate further caused Plaintiff's mother to fear that someone was coming to her home.

61. Further, Upstate also caused substantially similar voicemails to be left for Plaintiff's husband in order to embarrass and humiliate Plaintiff.

62. The communications described above in voicemails and text messages would cause the least sophisticated consumer to believe that a lawsuit had been filed or imminently would

7

be filed against him and that an attorney was working on recovery of the Account for Upstate.

63. In one or more communication with Plaintiff, Upstate failed to inform Plaintiff that Upstate was a debt collector, that Upstate was attempting to collect a debt and/or that any information obtained would be used for the purpose of debt collection.

64. Upstate's purpose for calling Plaintiff was to attempt to collect the Account.

65. Upstate did not provide Plaintiff with notice of his right to dispute the Account or to request validation of the Account.

66. The telephone calls described above each constituted a "communication" as defined by FDCPA § 1692a(2).

67. The only reason that Upstate and/or its representative(s), employee(s) and/or agent(s) made telephone call(s) to Plaintiff was to attempt to collect the Account.

68. The only reason that Upstate and/or its representative(s), employee(s) and/or agent(s) had telephone conversation(s) with Plaintiff was to attempt to collect the Account.

69. During all times pertinent hereto, AAG (a) created the collection policies and procedures used by Upstate, and its respective employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of Upstate, (c) oversaw the application of the collection policies and procedures used by Upstate and its employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by Upstate and its employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Plaintiff as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by Upstate and its employees and agents in

8

connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, ratified and benefitted financially from the unlawful debt collection practices used by Upstate and its employees and agents in attempts to collect an alleged debt from Plaintiff as alleged in this complaint.

70. AAG, directly or indirectly, exerted influence over Upstate and caused Upstate to act in the manner that each did with respect to Plaintiff.

71. During all times pertinent hereto, AAG and Harris Hill and Intercap and NDH (a) ratified the unlawful debt collection practices and procedures used by Upstate and its employees and agents in connection with its common efforts to collect consumer debts, and (b) had knowledge of, approved, participated in, ratified and benefitted financially from the unlawful debt collection practices used by Upstate and its employees and agents in attempts to collect an alleged debt from Plaintiff as alleged in this complaint.

72. All of the conduct by Upstate and/or AAG and/or their employees and/or agents alleged in the preceding paragraphs was done knowingly and willfully.

73. Upstate's collection practices caused Plaintiff to suffer fear, anxiety, stress, sleeplessness, mental anguish mild depression and/or distraction from normal life.

74. As a consequence of Defendants' collection activities and communication(s), Plaintiff seeks damages and attorneys fees and costs pursuant to 15 U.S.C. § 1692k.

## **RESPONDEAT SUPERIOR**

75. The representative(s) and/or collector(s) at Upstate were employee(s) and/or agents of Upstate at all times mentioned herein.

76. The representative(s) and/or collector(s) at Upstate were acting within the course of their employment at all times mentioned herein.

77. The representative(s) and/or collector(s) at Upstate were under the direct supervision and control of Upstate at all times mentioned herein.

78. The actions of the representative(s) and/or collector(s) at Upstate are imputed to their employer, Upstate.

79. AAG and Harris Hill and Intercap and NDH were aware of, and profited from, the collection methods and practices used by Upstate's employees.

80. Upstate acted at all times as an agent of AAG and Harris Hill and Intercap and NDH.

81. The actions of Upstate are imputed to AAG and Harris Hill and Intercap and NDH.

### COUNT I:  VIOLATIONS OF THE FDCPA 15 U.S.C. §1692, et seq. BY UPSTATE REMEDIAL MANAGEMENT INC.

82. The previous paragraphs are incorporated into this Count as if set forth in full.

83. The act(s) and omission(s) of Upstate and its representative(s), employee(s) and/or agent(s) violated 15 U.S.C. § 1692c(b) and §1692e generally and §1692e(2)&(3)&(5)& (8)&(10)&(11)&(13) specifically and §1692g(a).

84. Pursuant to 15 U.S.C. §1692k Plaintiff seeks damages, reasonable attorney's fees and costs from Upstate.

### COUNT II:  INVASION OF PRIVACY (INTRUSION ON SECLUSION) BY UPSTATE REMEDIAL MANAGEMENT INC.

85. In the alternative, without waiving any of the other causes of action herein, without waiving any procedural, contractual, statutory, or common-law right, and incorporating all other allegations herein to the extent they are not inconsistent with the cause of action pled here, Upstate is liable to Plaintiff for invading Plaintiff's privacy (intrusion on seclusion).  Upstate intentionally caused the intrusion upon Plaintiff's solitude, seclusion, or private affairs, and such intrusion would be highly offensive to a reasonable person.

86. Plaintiff suffered actual damages from Upstate as a result of the intrusion on Plaintiff's privacy.

## COUNT III:  VIOLATIONS OF THE FDCPA 15 U.S.C. § 1692, et seq. BY ALLIED ALLIANCE GROUP, INC.

87. The previous paragraphs are incorporated into this Count as if set forth in full.

88. By influencing and/or controlling and/or ratifying and/or approving and/or profiting from the conduct of Upstate, AAG is liable for the act(s) and omission(s) of Upstate and its representative(s), employee(s) and/or agent(s) for violations of 15 U.S.C. § 1692c(b) and §1692e generally and §1692e(2)&(3)&(5)& (8)&(10)&(11)&(13) specifically and §1692g(a).

89. Pursuant to 15 U.S.C. §1692k Plaintiff seeks damages, reasonable attorney's fees and costs from AAG.

## COUNT IV:  INVASION OF PRIVACY (INTRUSION ON SECLUSION) BY ALLIED ALLIANCE GROUP, INC.

90. In the alternative, without waiving any of the other causes of action herein, without waiving any procedural, contractual, statutory, or common-law right, and incorporating all other allegations herein to the extent they are not inconsistent with the cause of action pled here, AAG is liable to Plaintiff for colluding with Upstate to invade Plaintiff's privacy (intrusion on seclusion).  AAG intentionally caused the intrusion upon Plaintiff's solitude, seclusion, or private affairs, and such intrusion would be highly offensive to a reasonable person.

91. Plaintiff suffered actual damages from AAG as a result of the intrusion on Plaintiff's privacy.

11

### COUNT V:  VIOLATIONS OF THE FDCPA 15 U.S.C. § 1692, et seq. BY HARRIS HILL CONSULTING GROUP, INC.

92. The previous paragraphs are incorporated into this Count as if set forth in full.

93. By influencing and/or controlling and/or ratifying and/or approving and/or profiting from the conduct of Upstate, Harris Hill is liable for the act(s) and omission(s) of Upstate and its representative(s), employee(s) and/or agent(s) for violations of 15 U.S.C. § 1692c(b) and §1692e generally and §1692e(2)&(3)&(5)& (8)&(10)&(11)&(13) specifically and §1692g(a).

94. Pursuant to 15 U.S.C. §1692k Plaintiff seeks damages, reasonable attorney's fees and costs from Harris Hill.

### COUNT VI:  INVASION OF PRIVACY (INTRUSION ON SECLUSION) BY HARRIS HILL CONSULTING GROUP, INC.

95. In the alternative, without waiving any of the other causes of action herein, without waiving any procedural, contractual, statutory, or common-law right, and incorporating all other allegations herein to the extent they are not inconsistent with the cause of action pled here, Harris Hill is liable to Plaintiff for colluding with Upstate to invade Plaintiff's privacy (intrusion on seclusion).  Harris Hill intentionally caused the intrusion upon Plaintiff's solitude, seclusion, or private affairs, and such intrusion would be highly offensive to a reasonable person.

96. Plaintiff suffered actual damages from Harris Hill as a result of the intrusion on Plaintiff's privacy.

## COUNT VII:  VIOLATIONS OF THE FDCPA 15 U.S.C. § 1692, et seq. BY INTERCAP SERVICES, LLC

97. The previous paragraphs are incorporated into this Count as if set forth in full.

98. By influencing and/or controlling and/or ratifying and/or approving and/or profiting from the conduct of Upstate, Intercap is liable for the act(s) and omission(s) of Upstate and its representative(s), employee(s) and/or agent(s) for violations of 15 U.S.C. § 1692c(b) and §1692e generally and §1692e(2)&(3)&(5)& (8)&(10)&(11)&(13) specifically and §1692g(a).

99. Pursuant to 15 U.S.C. §1692k Plaintiff seeks damages, reasonable attorney's fees and costs from Intercap.

## COUNT VIII:  INVASION OF PRIVACY (INTRUSION ON SECLUSION) BY INTERCAP SERVICES LLC

100. In the alternative, without waiving any of the other causes of action herein, without waiving any procedural, contractual, statutory, or common-law right, and incorporating all other allegations herein to the extent they are not inconsistent with the cause of action pled here, Intercap is liable to Plaintiff for colluding with Upstate to invade Plaintiff's privacy (intrusion on seclusion).  Intercap intentionally caused the intrusion upon Plaintiff's solitude, seclusion, or private affairs, and such intrusion would be highly offensive to a reasonable person.

101. Plaintiff suffered actual damages from Intercap as a result of the intrusion on Plaintiff's privacy.

13

## COUNT IX:  VIOLATIONS OF THE FDCPA 15 U.S.C. § 1692, et seq. BY NATIONAL DEBT HOLDINGS, LLC

102. The previous paragraphs are incorporated into this Count as if set forth in full.

103. By influencing and/or controlling and/or ratifying and/or approving and/or profiting from the conduct of Upstate, NDH is liable for the act(s) and omission(s) of Upstate and its representative(s), employee(s) and/or agent(s) for violations of 15 U.S.C. § 1692c(b) and §1692e generally and §1692e(2)&(3)&(5)& (8)&(10)&(11)&(13) specifically and §1692g(a).

104. Pursuant to 15 U.S.C. §1692k Plaintiff seeks damages, reasonable attorney's fees and costs from AAG.

## COUNT X:  INVASION OF PRIVACY (INTRUSION ON SECLUSION) BY NATIONAL DEBT HOLDINGS LLC

105. In the alternative, without waiving any of the other causes of action herein, without waiving any procedural, contractual, statutory, or common-law right, and incorporating all other allegations herein to the extent they are not inconsistent with the cause of action pled here, NDH is liable to Plaintiff for colluding with Upstate to invade Plaintiff's privacy (intrusion on seclusion).  NDH intentionally caused the intrusion upon Plaintiff's solitude, seclusion, or private affairs, and such intrusion would be highly offensive to a reasonable person.

106. Plaintiff suffered actual damages from NDH as a result of the intrusion on Plaintiff's privacy.

## JURY TRIAL DEMAND

107. Plaintiff is entitled to and hereby demands a trial by jury.

**DEMAND FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court grant the following:

108. Judgment in favor of Plaintiff and against Upstate Remedial Management, Inc., as follows:

    a. Actual damages pursuant to 15 U.S.C. §1692k(a)(1);

    b. Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2);

    c. Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3); and

    d. Such other and further relief as the Court deems just and proper.

109. Judgment in favor of Plaintiff and against Allied Alliance Group Inc. as follows:

    a. Actual damages pursuant to 15 U.S.C. §1692k(a)(1);

    b. Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2);

    c. Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3); and

    d. Such other and further relief as the Court deems just and proper.

110. Judgment in favor of Plaintiff and against Harris Hill Consulting Group, Inc., as follows:

    e. Actual damages pursuant to 15 U.S.C. §1692k(a)(1);

    f. Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2);

g.  Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3); and

h.  Such other and further relief as the Court deems just and proper.

111. Judgment in favor of Plaintiff and against Intercap Services, LLC, as follows:

i.  Actual damages pursuant to 15 U.S.C. §1692k(a)(1);

j.  Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2);

k.  Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3); and

l.  Such other and further relief as the Court deems just and proper.

112. Judgment in favor of Plaintiff and against National Debt Holdings, LLC, as follows:

m.  Actual damages pursuant to 15 U.S.C. §1692k(a)(1);

n.  Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2);

o.  Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3); and

p.  Such other and further relief as the Court deems just and proper.

16

Respectfully submitted,

/s/ Jeffrey D. Wood

Jeffrey D. Wood, Esq.
ArkBN: 2006164
THE WOOD FIRM, PLLC
11610 Pleasant Ridge Rd.
Suite 103 – Box 208
Little Rock, AR  72223
TEL:  214-914-8374
FAX:  888-598-9022
EMAIL:  jeff@jeffwoodlaw.com
Attorney for Plaintiff

17